IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-HC-02214-BO

| | | |
|---|---|---|
| TONY EARL STATEN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TODD ISHEE, | ) | |
| | ) | |
| Respondent. | ) | |

Tony Earl Staten ("petitioner") petitioned this court for a writ of habeas corpus pursuant to

28 U.S.C. § 2254. The matter now comes before the court on petitioner's motion for

reconsideration (DE 29) and motion to amend the petition (DE 35). The matter also is before the

court on respondent's supplemental motion for summary judgment pursuant to Federal Rule of

Civil Procedure 56(a) (DE 30). The issues raised are ripe for adjudication. For the following

reasons, the court denies petitioner's motions, but grants respondent's motion for summary

judgment.

**STATEMENT OF THE CASE**

For ease of reference, the statement of the case as set forth in the court's August 16, 2024,

order is as follows:

> On January 28, 2003, petitioner was convicted in the Gates County
> Superior Court of first-degree felony murder and armed robbery.
> (DE 13-1); (DE 13-2). Petitioner subsequently was sentenced to a
> term of life imprisonment without the possibility of parole on the
> first-degree murder conviction, and [a concurrent term of] 100-129
> months imprisonment on the armed robbery conviction. (DE 13-3);
> (DE 13-4). Petitioner appealed. See State v. Staten, 172 N.C. App.

673, 616 S.E.2d 650 (2005). The North Carolina Court of Appeals found no error as to petitioner's murder conviction, but found insufficient evidence to support his armed robbery conviction. Id. at 688. Accordingly, the court of appeals "reversed [petitioner's] armed robbery conviction and remanded to the trial court with instructions to enter a judgment against [petitioner] as a verdict finding him guilty of common law robbery." Id. p. 688. Finally, the court of appeals arrested judgment and vacated the sentence as to the common law robbery conviction. Id. The court of appeals explained:

> Here, the trial court properly sentenced defendant to life imprisonment for the first-degree (felony) murder of Boone. However, because the underlying offense merged with the felony murder conviction, it was error to sentence defendant for the underlying offense. Because we have reversed and remanded the conviction of armed robbery with instructions to the trial court to impose a verdict as to common law robbery, we arrest judgment on the common law robbery conviction.

Id.) Petitioner appealed to the North Carolina Supreme Court, and the supreme court dismissed the appeal. State v. Staten, 360 N.C. 180, 626 S.E.2d 838 (2005). The United States Supreme Court subsequently denied petitioner's petition for a writ of certiorari on April 17, 2006.[1] See Staten v. North Carolina, 547 U.S. 1081 (2006).

On October 28, 2009, petitioner filed a Motion for Appropriate Relief ("MAR") in the Gates County Superior Court. (DE 13-13). The superior court denied petitioner's MAR on November 12, 2009. (DE 13-14). On December 10, 2009, petitioner filed a petition for a writ of certiorari with the North Carolina Court of Appeals, which the court of appeals dismissed on January 13, 2010. (DE 13-15); (DE 13-17). Petitioner next filed multiple documents in the North Carolina state courts, including several additional unsuccessful

---

[1] Respondent was unable to locate a copy of the petition for a writ of certiorari which petitioner filed with the United States Supreme Court. See ((DE 14), p. 2, n.2).

2

MARs. See (DE 13-18)-(DE 13-29). On February 26, 2019, the superior court conducted a "resentencing after appellate review" and arrested judgment for common law robbery. (DE 13-24). In the interim, petitioner filed an action in the Federal Court of Claims for unjust imprisonment, which the court of claims dismissed. Staten v. United States, No. 15-308C, 2015 WL 4441672, at *1 n.4 (Fed. Cl. July 17, 2015). . . .

((DE 27), pp. 1-2). Petitioner next filed several MARs in the superior court. See (DE 13-25). On

April 16, 2019, the superior court entered an order which provided as follows:

> This matter coming on before the undersigned . . . upon defendant's repeated Motions requesting the same or similar relief upon the same or similar arguments, most recently received on April 10, 2019 and April 4, 2019. And the Court making the following FINDINGS AND CONCLUSIONS:
>
> Defendant has previously been held subject to procedural default and relief barred in Orders dated November 12, 2009, October 2, 2017, December 13, 2017 (copy) and letters dated April 4, 2012, July 27, 2012, also denying requests for relief are incorporated herein.
>
> Relief is denied based upon previous orders.

See (DE 13-25) (order captioned "Subsequent Order on Subsequent Motion for Appropriate

Relief"). Petitioner continued to file MARs in the superior court. See (DE 13-26); (DE 13-27).

On June 23, 2023, the superior court denied petitioner's "repeated" MARs. (DE 13-29) (order

captioned "Sixth Subsequent Order on Subsequent Motion for Appropriate Relief").

> On September 26, 2023, petitioner filed the instant habeas petition pursuant to § 2254 and alleged the following claims: (1) "I was convicted on [first] degree felony murder based solely on the underling offense of armed robbery," a conviction the court of appeals vacated; (2) "I was sentenced to life in prison for armed robbery" in violation of the Fifth Amendment to the United States Constitution; (3) "medical expert testimony. I satisfied both prongs;" and (4) "ineffectiveness of trial and appellate defense counsel." ((DE 1), pp. 6-11). On February 12, 2024, respondent filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), arguing the petition is time-barred.

3

Respondent, alternatively, argues the court should grant summary judgment on the merits.[] Petitioner subsequently filed a motion requesting the appointment of counsel and a motion for an exemption from complying with this court's Local Civil Rule 56(a)(2).

On April 4, 2024, the court granted in part petitioner's motion requesting the appointment of counsel, and appointed North Carolina Prisoner Legal Services ("NCPLS") for the limited purpose of reviewing all the filings in this case and determining whether it wished to file a response to respondent's motion for summary judgment on petitioner's behalf. The court also stayed petitioner's response deadline pending NCPLS's review and denied without prejudice petitioner's motion for an exemption. Both petitioner and NCPLS responded to the court's April 4, 2024, order. Petitioner stated that he did not want assistance from NCPLS, and NCPLS stated that it reviewed the filings and was unable to accept appointment to respond to respondent's motion for summary judgment. The court next denied the remainder of petitioner's motion to appoint counsel, and then granted him an exemption from complying with its Local Civil Rule 56.1(a). On May 17, 2024, petitioner responded to respondent's motion for summary judgment.

See ((DE 27), pp. 3-4).

On August 16, 2024, the court denied respondent's motion for summary judgment as to petitioner's Fifth Amendment double jeopardy claim, but granted the remainder of defendants' motion. The court also dismissed without prejudice any new claims petitioner raised in response to defendants' motion for summary judgment. Finally, the court provided respondent until October 28, 2024, to file a supplemental motion for summary judgment addressing petitioner's remaining claim. On September 6, 2024, petitioner filed a motion for reconsideration.

On October 28, 2024, respondent filed a supplemental motion for summary judgment as to petitioner's Fifth Amendment double jeopardy claim. Respondent also filed a statement of material facts and appendix. Then, on March 31, 2025, petitioner filed a motion for leave to amend his petition. Respondent responded.

4

## STATEMENT OF FACTS

The facts underlying petitioner's convictions, as set forth by the North Carolina Court of

Appeals, are summarized below:

> Defendant reported to Hertford County Superior Court on the morning of 6 September 2000 to settle three traffic tickets. While in the courtroom, defendant became upset with the courtroom staff. The trial judge asked defendant to leave the courtroom and return when he calmed down. Instead, defendant walked out of the courtroom and away from the courthouse, heading north on U.S. Highway 13 from Hertford County toward Gates County. At about 10:30 a.m., Trooper Jason Jones of the North Carolina State Highway Patrol, was patrolling U.S. Highway 13 near Winton, North Carolina, when he saw defendant. Thinking defendant may have had car trouble, Trooper Jones asked defendant if he needed help. Defendant, who was holding a Bible, responded by asking Trooper Jones whether he knew "the Lord?" Trooper Jones responded, "Yes" and again asked defendant if he needed any help. Defendant said, "No" and Trooper Jones left. Defendant was not aggressive, nor did he appear to be angry or frightened.
>
> Later that morning at 11:45 a.m., Trooper Michael Warren saw defendant walking down U.S. Highway 13. Defendant motioned for Trooper Warren to pull over and he did so. Trooper Warren asked defendant his name and where he was going. Defendant asked Trooper Warren for a ride but did not indicate where he wanted to go. Trooper Warren then pulled away, heading north on U.S. Highway 13 and observed defendant also continue walking north.
>
> At about noon that same day, Penny Atkins Rose was driving north on U.S. Highway 13. After crossing the bridge at Winton, Rose saw Abraham Boone at the side of the road on his hands and knees. He was missing one shoe and was not wearing a hat or glasses. She stopped and called 911 for assistance. She attempted to talk to him, but failed to understand Boone's responses as "he seemed to slip into unconsciousness." Rose returned to her car and, concerned for Boone's survival, again called for assistance.
>
> Alice Sharpe, who was also driving by, realized there was an emergency and stopped to help. By that time, Boone was completely unconscious. Emergency personnel testified Boone had no pulse and was not breathing by the time he arrived at the hospital. Medical testimony revealed Boone died as a result of a heart attack and that

5

the scrapes and abrasions on Boone were consistent with a confrontation.

Isaiah Harrell testified that on the afternoon of 6 September 2000 while at a stop sign his car was hit in the rear end by defendant. Defendant jumped out of the car he was driving, opened Harrell's door, hit Harrell in the stomach and pulled him out of his car. Defendant then got in Harrell's car and sped off, leaving Harrell standing in the intersection.

Deputy Tim Lassiter, of the Hertford County Sheriff's Department received a call reporting a car jacking at about noon on 6 September 2000. Meanwhile, officers from the Ahoskie Police Department were chasing defendant who was driving recklessly at a high rate of speed. Deputy Lassiter saw defendant turn his car and crash directly into the vehicle of Deputy Mike Stephenson also of the Hertford County Sheriff's Department. After struggling with several officers, defendant was arrested and taken into custody.

Later that afternoon, defendant spent approximately half an hour giving a detailed statement to law enforcement officials. Defendant said he recalled seeing Troopers Jones and Warren, stating he thought at the time they were going to kill him. He also recalled flagging down Boone, pulling him out of the car and then driving off, leaving Boone "beside the road laying down." He remembered observing that the car he had stolen from Boone was "hot" and wanting to get rid of it. Finally, he recounted taking Harrell's car.

Staten, 616 S.E. 2d at 674-675.

## DISCUSSION

### I.      Motion for Reconsideration

Petitioner moves for reconsideration of a portion of the court's August 16, 2024, order which allowed respondent time to file a supplemental motion for summary judgment addressing petitioner's Fifth Amendment double jeopardy claim.   Specifically, petitioner requests that the court not provide respondent the opportunity to file a supplement motion for summary judgment, and, instead, grant judgment in favor of petitioner for the remaining claim.   Pursuant to Federal

6

Rule of Civil Procedure 54(b), "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-515 (4th Cir. 2003) (citing Fayetteville Investors v. Commercial Builders Inc., 936 F.2d 1462, 1469 (4th Cir. 1991)). Resolution of a motion for reconsideration is "committed to the discretion of the district court." Id. at 515.

Here, respondent did not construe petitioner's Fifth Amendment claim as containing a double jeopardy component. See ((DE 27), p. 9). As a result, the court provided respondent notice of petitioner's double jeopardy claim and the opportunity to address the claim. Based upon the foregoing, the court finds its original determination appropriate, and petitioner's motion for reconsideration is DENIED. See Fed. R. Civ. P. 54(b).

II.     Motion to Amend

Petitioner moves to amend his petition to include several new claims. Petitioner requires leave to amend his complaint. See Fed. R. Civ. P. 15(a); see also, 28 U.S.C. § 2242. Leave to amend should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). "In the absence of any apparent or declared reason – such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotations omitted).

7

Here, amendment would be futile because, as set forth in more detail below, the petition is time-barred. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000). Even if the petition were not time-barred, the court still would deny petitioner leave to amend his complaint due to petitioner's undue delay in moving to amend his petition and unfair prejudice to respondent. Specifically, petitioner did not move to amend his petition until after the court granted respondent summary judgment as to all of petitioner's claims, except his Fifth Amendment double jeopardy claim, and five months after respondent filed her supplemental motion for summary judgment addressing the remaining double jeopardy claim. At this point, respondent has fully responded to the petition and petitioner has not explained his long delay in moving to amend the petition. Thus, petitioner's motion to amend is denied. See Smith v. Angelone, 111 F.3d 1126, 1133 (4th Cir. 1997) ("[T]his court has reasoned that a motion to amend may be denied when it has been unduly delayed and when allowing the motion would prejudice the nonmovant."); McLaurin v. Warden McCormick Corr. Inst., No. 6:21-3936-JFA-KFM 2023 WL 171879, at *5 (D.S.C. Jan. 12, 2023), appeal dismissed, 2023 WL 5174296 (4th Cir. Apr. 13, 2023).

III.    Motion for Summary Judgment

      A.    Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587

8

(1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") authorizes federal courts to "entertain an application for a writ of habeas corpus" for a convicted state prisoner on the ground that his custody violates "the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). Where a state court has adjudicated the merits of such a claim in the state court proceeding, the AEDPA "erects a formidable barrier to federal habeas relief." Burt v. Titlow, 571 U.S. 12, 19 (2013). Under AEDPA, there are two paths to federal habeas relief in cases where a state court adjudicated a claim on its merits. See 28 U.S.C. § 2254(d); Harrington v. Richter, 562 U.S. 86, 98 (2011). First, a federal court may grant federal habeas relief if the state court decision "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Second, a federal court may grant federal habeas relief if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." Id. § 2254(d)(2); see, e.g., Shoop v. Twyford, 596 U.S. 811, 819 (2022). A state court's factual determination is presumed correct unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378–79 (4th Cir. 2010).

A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an opposite result. Williams v. Taylor, 529 U.S. 362, 405 (2000) (quotation omitted). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably

9

applies it to the facts of the particular state prisoner's case. Id. at 407. "[A] state court decision also involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id.

Congress intended AEDPA's standard to be difficult to meet. See Mays v. Hines, 592 U.S. 385, 391–93 (2021); Harrington, 562 U.S. at 102. "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 562 U.S. at 103. To prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis for the state court to deny relief." Id. at 98. "In other words, a litigant must show that the state court's ruling was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Virginia v. LeBlanc, 582 U.S. 91, 94 (2017) (quotation omitted).

B.    Analysis

1.    Statute of Limitations

The court first considers whether the petition is time-barred. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus by a person in custody pursuant to the judgment of a state court must be filed within one year. 28 U.S.C. § 2244(d)(1). The period begins to run from the latest of several dates:

> A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; B) the date on which the impediment to filing an application . . . is removed . . .; C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or D) the date

10

> on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> Id.

Here, the statutory period began to run on the date petitioner's judgment became final. On February 26, 2019, the superior court conducted a "resentencing after appellate review," in accordance with the North Carolina Court of Appeal's remand to the superior court with instructions to enter a judgment against petitioner as a verdict finding him guilty of common law robbery. See Staten, 616 S.E.2d at 688. Accordingly, petitioner's judgment was entered on February 26, 2019. See Woodfolk v. Maynard, 857 F.3d 531, 542 (4th Cir. 2017) (finding "when a state court defendant has been granted a resentencing, the limitations period under § 2244(d)(1)(A) runs from the judgment entered upon resentencing—even if . . . the defendant's habeas petition challenges the underlying conviction."). Petitioner thereafter had 14 days after the entry of judgment on February 26, 2019, to file an appeal. N.C.R. of App. P. 4(a)(2). Petitioner did not file an appeal. Therefore, petitioner's judgment became final on March 12, 2019.

Petitioner's one-year statutory period then began to run on March 12, 2019, and ran for 23 days until petitioner filed his MAR on April 4, 2019. See (DE 13-25). Petitioner's one-year period then remained tolled from April 4, 2019, until the superior court denied petitioner's MAR on April 16, 2019. See 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Ordinarily, the one-year statute of limitations would begin to run again at the "expiration of the period of time to seek further appellate review [of the state post-conviction motion]." Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). However, the North Carolina Rules of Appellate Procedure do not firmly

11

establish any deadline for prisoners to file a petition for writ of certiorari to review orders denying a MAR. See N.C.R. App. P. 21(e). Rather, prisoners seeking to challenge the denial of a MAR must avoid "unreasonabl[e] delays." Id.

In a case construing similar language, the Supreme Court held that "[i]n the absence of ... clear direction or explanation from [a state] Supreme Court about the meaning of the term 'reasonable time' ... [the district court] must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness." Evans v. Chavis, 546 U.S. 189, 198 (2006). The Court further explained that a district court's analysis should be informed by the state's deadlines for filing other types of appeals. See id. at 201. Because the North Carolina Supreme Court has not defined the phrase "unreasonable delay" for purposes of North Carolina Rule of Appellate Procedure 21(e), the court compares other relevant state deadlines to determine when petitioner's right to seek appellate review of the order denying his MAR expired. Evans, 546 U.S. at 201; see also Coley v. Hooks, No. 5:16-HC-2308-FL, 2018 WL 1570799, at *4 (E.D.N.C. Mar. 30, 2018), appeal dismissed, 735 F. App'x 105 (4th Cir. 2018); McConnell v. Beck, 427 F. Supp. 2d 578, 582 (M.D.N.C. 2006).

In North Carolina, the time period for filing appeals is 14 days in criminal cases, 30 days in civil cases, and 60 days in death penalty cases. N.C.R. App. P. 3(c), 4(a), 21(f). The court finds that the 30-day deadline for filing appeals in a civil case is most applicable to a post-conviction petition for certiorari. See Evans, 546 U.S. at 201; Coley, 2018 WL 1570799, at *4. Therefore, AEDPA's one-year statute of limitations was tolled from the date petitioner filed his MAR until his time for filing an appeal expired thirty days after the state court denied the MAR. Thus, the statute of limitations was tolled until May 16, 2019 (i.e. 30 days after his MAR was denied by the

12

Gates County Superior Court). Petitioner's statutory period subsequently resumed on May 16, 2019, and expired 342 days on April 22, 2020.

Petitioner's second MAR, or any later state post-conviction filing, does not operate to further toll the running of the statutory period. See Streater v. Beck, No. 3:05CV284-MU-02, 2006 WL 1877149, *2 (W.D.N.C. Jul. 6, 2006) ("[I]t is well settled that a ... motion or petition [filed subsequent to the close of the statutory period] for collateral review in State court cannot somehow breathe new life into an already expired federal limitations period[.]"), appeal dismissed, 207 F. App'x 271, 2006 WL 3407741 (4th Cir. 2006); Lounds v. Williams, No. 2:22-cv-3272-TMC-MGB, 2023 WL 5772625, at *8 (D.S.C. July 21, 2023), adopting R&R, 2023 WL 5287158 (Aug. 17, 2023). Based upon the foregoing, the instant petition filed on September 19, 2023[2] is untimely.

To the extent petitioner asserts he is entitled to equitable tolling for the time period that he was waiting for NCPLS to review his criminal proceedings to determine whether it would provide him assistance in seeking post-conviction relief, mere delays in seeking legal advice from NCPLS generally does not warrant equitable tolling. See Lindsay v. Hooks, No. 5:19-HC-2179-FL, 2020 WL 5749999, at * 3 (E.D.N.C. Sept. 25, 2020); Smith v. Dail, No. 1:13CV911, 2014 WL 2442072, at *4 (M.D.N.C. May 30, 2014) ("Petitioner [] fails to explain why–if NCPLS did discourage him from filing–it took him so long to sort through any confusion on this issue and actually file."), appeal dismissed, 584 F. App'x 86 (4th Cir. 2014). Further, ignorance of the law is not a basis for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (2004). Finally, NCPLS attorneys are not required to take every prisoner action brought by inmates and may use their professional

---

[2] Providing petitioner the benefit of the mailbox rule, the court deems the instant petition, dated September 19, 2023, but filed on September 26, 2023, to be filed on September 19, 2023. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a *pro se* prisoner's notice of appeal is filed at the moment it is delivered to prison authorities for mailing to the district court).

13

judgment when determining whether to provide representation in a matter. See Salters v. Butler, No. 5:06–CT–3073–H, 2006 WL 4691237, * 1 (E.D.N.C. Oct. 19, 2006), appeal dismissed, 214 F. App'x 267 (4th Cir. Jan. 24, 2007); see also, Zuniga v. Perry, No. 1:15CV35, 2015 WL 5159299, at *5 (M.D.N.C. Sept. 2, 2015) ("That NCPLS declines to represent some inmates does not deny prisoners meaningful access to the courts.") (citation omitted). Thus, petitioner is not entitled to equitable tolling, and the action is time-barred.

2.     Fifth Amendment Double Jeopardy Claim

The court next alternatively considers the merits of petitioner's double jeopardy claim. Petitioner alleges his rights pursuant to the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution were violated because he had fully served his sentence for armed robbery when he was resentenced to common law robbery. "The Double Jeopardy Clause guarantees consists of three separate constitutional protections: 'It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" United States v. Bullis, 122 F.4th 107, 112 (4th Cir. 2024) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)).

Here, petitioner's double jeopardy claim implicates the prohibition on multiple punishments. Where a petitioner has developed an expectation of finality in the sentence, the Double Jeopardy Clause may proscribe resentencing, particularly in circumstances where the petitioner fully served the sentence prior to resentencing. See United States v. Silvers, 90 F.3d 95, 99–101 (4th Cir. 1999). In Silvers, the Fourth Circuit Court of Appeals held "once a defendant fully serves a sentence for a particular crime, the Double Jeopardy Clause's bar on multiple punishments prevents any attempt to increase thereafter a sentence for that crime. See id. at 101.

14

Because petitioner's sentence was not increased when he was resentenced, his resentencing did not violate the Double Jeopardy Clause. See Gorham v. North Carolina, No. 5:20-HC-2009-FL, 2021 WL 4315457, at *8 (E.D.N.C. Sept. 22, 2021). Additionally, petitioner's resentencing did not violate the Double Jeopardy Clause because he had not yet served the consolidated term of life imprisonment for the first-degree murder sentence he received for his felony murder conviction at the time he was resentenced. See Bullis, 122 F.4th at 116 ("Because Bullis had served 331 months at the time of resentencing, he had yet to complete either of the aggregate sentence packages. As a result, the district court could resentence Bullis on Counts 1, 2, 4, and 5 without violating his double jeopardy rights."); Smith v. Mitchell, 348 F.3d 177, 210 (6th Cir. 2003) (rejecting petitioner's claim that imposition of multiple death sentences for a single homicide violated double jeopardy as harmless error under Brecht[v. Abrahamson, 507 U.S. 619 (1993)] because the court made the sentences concurrent). Finally, the Double Jeopardy Clause does not bar resentencing when a conviction or sentence is set aside on appeal. See United States v. Wilson, 420 U.S. 332, 344–45 (1975); Evans v. Thompson, 881 F.2d 117, 123 n.1 (4th Cir. 1989), cert denied 947 U.S. 1010 (1990); Gorham, 2021 WL 4315457, at *7 ("[A] petitioner [can] have no legitimate expectation of finality in his sentence [where] he has asked that the prior sentence be nullified."). Based upon the foregoing, petitioner cannot establish a double jeopardy violation.

To the extent petitioner challenges the North Carolina Court of Appeal's order reversing petitioner's armed robbery conviction and directing the Gates County superior court to enter judgment finding petitioner guilty of common law robbery, he still cannot establish a double jeopardy violation. The Fourth Circuit Court of Appeals has held "it is within our power to direct entry of judgment on a lesser included offense when vacating a greater offense for insufficient evidence." United States v. Hickman, 626 F.3d 756, (4th Cir. 2010); Morris v. Mathews, 475 U.S.

15

237, 246–47 (1986); Silvers, 90 F.3d at 99; see also, Nicholson v. Strange, No. 3:05-cv-137-SRU, 2006 WL 726650, at *5 (D. Conn. 2006) ("The United States Supreme Court has approved the practice of directing entry of judgment on a lesser included offense when a conviction on the greater offense is reversed on grounds that affected only the greater offense.") (citing Rutledge v. United States, 517 U.S. 292, 306 (1996)).

Here, the North Carolina Court of Appeals based its decision to vacate petitioner's armed robbery conviction and to direct the superior court to enter judgment finding him guilty of common law robbery upon the following:

> Autopsy reports indicate Boone died of a heart attack. The autopsy reports also indicate the scrapes, abrasions and bruises on Boone's body show that, because his heart stopped, there was not enough time for the blood to flow to these wounds before Boone's death. Forensic pathologist Dr. M.G.F. Gilliland testified Boone sustained minor cuts and abrasions prior to his death that were not life threatening; that Boone's death was caused by a combination of his weak heart and the stress caused by defendant stealing his car.
>
> Here, defendant testified he used only his hands to overtake Boone and remove him from his car:
>
> > [Boone] was coming from the Gates County war. I stuck my hand out. I am flagging him down for him to stop. Not that I ever did assault him, all I did—when I was in front of this car, he tried—he tried to drive around me and keep going because there was a whole lot of cars in the street. [Boone] pulled over to the right. That is when I went around to the passenger side. He tried to take off and the car wouldn't even move. And so then after I said, I need your car. I need your car. He still tried to take off. I undone his seat belt and I took my hand and pulled him (Defendant standing up.) ... I pulled my hand—I

16

> pulled him out to the side and jumped in the car and took off ... [i]f I would have hit a man that old, I would really did more than put a little scratch on his nose.
>
> Taking the evidence in the light most favorable to the State, the evidence is insufficient to support a conviction of armed robbery. See State v. Easterling, 300 N.C. 594, 604, 268 S.E.2d 800, 806–07 (1980) (evidence must be considered in the light most favorable to the State and the State is entitled to every reasonable inference therefrom). However, the evidence is sufficient to support a conviction of the lesser-included offense of common law robbery. Common law robbery is a lesser-included felony offense of armed robbery. See State v. Norris, 264 N.C. 470, 473, 141 S.E.2d 869, 871–72 (1965). Common law robbery requires proof of four elements: (1) felonious, non-consensual taking of (2) money or other personal property (3) from the person or presence of another (4) by means of force. State v. Hedgecoe, 106 N.C.App. 157, 161, 415 S.E.2d 777, 780 (1992). Therefore, although the evidence fails to support a conviction of armed robbery, it nevertheless is sufficient to support a conviction of the lesser included offense of common law robbery, which can properly serve as the underlying felony for defendant's first-degree felony murder conviction. State v. Vance, 328 N.C. 613, 623, 403 S.E.2d 495, 502 (1991). Therefore we reverse defendant's armed robbery conviction and remand to the trial court with instructions to enter a judgment against defendant as a verdict finding him guilty of common law robbery.

Staten, 616 S.E.2d at 687.

Here, the North Carolina Court of Appeals reversed petitioner's conviction for armed robbery on grounds which only affected his conviction for armed robbery. Petitioner's own testimony at trial provided evidence sufficient to support his conviction for common law robbery. Based upon the foregoing, petitioner cannot establish a double jeopardy violation, and respondent's supplemental motion for summary judgment is GRANTED.

17

## CONCLUSION

In summary, petitioner's motion for reconsideration (DE 29) and motion to amend (DE 35) are DENIED. Respondent's motion for summary judgment (DE 30) is GRANTED. The certificate of appealability is DENIED. See 28 U.S.C. § 2253(c); Buck v. Davis, 580 U.S. 100, 115 (2017); Miller-El v. Cockrell, 537 U.S. 322, 335-38 (2003); Slack v. McDaniel, 529 U.S. 473, 478, 483-85 (2000). The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the **17** day of July, 2025.

TERRENCE W. BOYLE
United States District Judge

18